UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ANNETTE MCEACHIN, | |
| Plaintiff, | Case No. 21-cv-12819 |
| | Honorable Terrence G. Berg |
| | Magistrate Judge Elizabeth A. Stafford |
| v. | |
| RELIANCE STANDARD LIFE INSURANCE COMPANY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD (ECF NOS. 10, 11)**

I.    **Introduction**

Plaintiff Annette McEachin has sued Defendant Reliance Standard Life Insurance Company alleging wrongful denial of long-term disability benefits from April 1, 2021, onward.  ECF No. 1.  This dispute is governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq.  *Id.*  Both parties move for judgment on the administrative record.  The Honorable Terrence G. Berg referred the motions to the undersigned for a report and recommendation under 28 U.S.C. § 636(b)(1)(B).  ECF No. 17.  The Court **RECOMMENDS** that McEachin's motion be **DENIED** (ECF No. 10), that Reliance's motion be **GRANTED**

(ECF No. 11), and that the decision of the plan administrator be

**AFFIRMED**.

## II.    Background

McEachin was covered under a long-term disability (LTD) insurance policy issued by Reliance.  Insureds were entitled to LTD benefits if they became "totally disabled," meaning they could not "perform the material duties of [their] Regular Occupation."  ECF No. 9, PageID.24, 35.  A "regular occupation" is the occupation an insured was routinely performing when the disability began, and McEachin's regular occupation was a human resources manager, performed at the sedentary level.  *Id.* at PageID.34, 575-576; ECF No. 9-5, PageID.3614.

McEachin was approved for LTD benefits for a period beginning in May 2017 for neck and back pain and migraines from a motor vehicle accident in February 2017.  ECF No. 9, PageID.424-425, 587.  Reliance reviewed updated medical records in October 2020 and discontinued McEachin's LTD benefits because her impairments were not physically or mentally disabling.  *Id.* at PageID.526-530.  McEachin appealed the termination and submitted more medical evidence.  *Id.* at PageID.533.  In

2

November 2020, Reliance reinstated LTD benefits, finding that the new records showed that McEachin was physically disabled.  *Id.*

In April 2021, Reliance again reviewed updated medical records and terminated LTD benefits because McEachin's impairments were not disabling.  *Id.* at PageID.537-540.  McEachin appealed the termination, and Reliance referred the case for independent physician review.  *Id.* at PageID.549, 558.  Based on those reviews, Reliance found that McEachin's physical restrictions would not preclude her from performing sedentary work.  *Id.* at PageID.559-562.  Although Reliance found that McEachin's psychological impairments were disabling, she was ineligible for continued benefits because the maximum duration for LTD benefits for a mental condition is 24 months.  *Id.* at PageID.46, 559-560, 563.  Thus, Reliance upheld its decision to terminate McEachin's benefits in October 2021.  *Id.* at PageID.563.  McEachin timely filed for judicial review.  ECF No. 1.

### III.   Analysis

### A.

The Court reviews a denial of benefits by the ERISA plan administrator de novo, "unless the plan grants the administrator discretionary authority to determine eligibility for benefits." *Deboard v.*

3

*Liberty Life Assurance Co. of Boston*, No. 2:13-CV-12838, 2014 WL 4064249, at *5 (E.D. Mich. Aug. 18, 2014).  The parties agree that the de novo standard of review applies.

Under the de novo standard, courts must determine whether the plan administrator made the correct decision.  *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990).  That is, "the court must determine whether the administrator properly interpreted the plan and whether the insured was entitled to benefits under the plan*." Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 809 (6th Cir. 2002).  The plan administrator's decision is given no deference or presumption of correctness.  *Perry*, 900 F.2d at 966.  The Court's review is limited to the administrative record and may include only the evidence presented to the plan administrator.  *Id.* at 967.  The plaintiff bears the burden of presenting enough evidence to show that she is entitled to benefits.  *Tobin v. Hartford Life & Accident Ins. Co.*, 233 F. Supp. 3d 578, 584 (W.D. Mich. 2017) (citing *Rose v. Hartford Fin. Servs. Grp., Inc.*, 268 F. App'x 444, 452 (6th Cir. 2008)).

**B.**

The parties first dispute whether the evidence shows that McEachin's physical impairments prevented her from performing sedentary work in April 2021.  McEachin argues that (1) Reliance failed to give enough weight

to her treating physicians' opinions, (2) Reliance failed to obtain a physical examination, and (3) the Social Security Administration's (SSA) disability determination supports her claim for LTD benefits. ECF No. 10, PageID.3676-3682. Reliance argues that it was justified in relying on the reviewing physicians' opinions, as McEachin's treating physicians' opinions conflicted with the objective medical findings. ECF No. 11, PageID.3701-3707. The Court reviews McEachin's arguments in turn.

In ERISA cases, treating physicians' opinions are not entitled to deference. *Hurse v. Hartford Life & Accident Ins. Co.*, 77 F. App'x 310, 315 (6th Cir. 2003) (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 1965 (2003)). While plan administrators "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician," courts may not "impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Id.* (cleaned up).

"On *de novo* review of this question, the court is to take into account all of the medical evidence, giving each doctor's opinion weight in accordance with the supporting medical tests and objective findings that underlie the opinion." *Crider v. Highmark Life Ins. Co.*, 458 F. Supp. 2d 487, 505 (W.D. Mich. 2006). A reviewing physician's opinion may be more

5

persuasive than a treating physician's opinion, "even where the former

rests upon a review of the medical record rather than direct examination of

the claimant." *Mellian v. Hartford Life & Accident Ins. Co.*, 161 F. Supp. 3d

545, 562 (E.D. Mich. 2016). File reviews may support an unfavorable

benefits decision if they are "reasonable and based on the evidence." *Id.*

(cleaned up). A file review is adequate if it describes the data reviewed,

does not ignore evidence favorable to the plaintiff, and does not reach

"incredible" conclusions inconsistent with the objective evidence. *Edwards*

*v. Metro. Life Ins. Co.*, 737 F. Supp. 2d 743, 761 (E.D. Mich. 2010).

Since her February 2017 car accident, McEachin has had chronic

neck and back pain and migraine headaches. ECF No. 9-2, PageID.1697;

ECF No. 9-3, PageID.2467. Those symptoms were exacerbated when

McEachin was in a second car accident in December 2017. ECF No. 9-3,

PageID.2467. For her migraines, McEachin has been treated with

medications and Botox injections. *Id.* at PageID.2378; ECF No. 9-2,

PageID.1697, 1701, 2075. McEachin's spinal conditions was treated with a

selective nerve block, bone stimulator, steroid injections, oral medications,

and physical therapy. ECF No. 9-3, PageID.2284, 2300-2303, 2310; ECF

No. 9-4, PageID.2619. She also had two surgeries while receiving LTD

benefits: (1) an anterior discectomy and fusion from C4 to C7 in November

6

2018, and (2) a posterior lumbar interbody fusion from L3 to L5 and laminectomy at L5-S1 in January 2020.  ECF No. 9-2, PageID.1931-1935; ECF No. 9-5, PageID.3387-3389.  And based on a May 2021 CT scan showing an incomplete fusion of the cervical spine at C6-C7, McEachin had a posterior cervical fusion in October 2021.  ECF No. 9-4, PageID.2666; ECF No. 9-5, PageID.3631-3632.

Three of McEachin's treating physicians stated in August 2021 that she was totally disabled: (1) orthopedic surgeon Peter Bono, M.D.; (2) neurologist Jeffrey Kutcher, M.D.; and (3) primary care physician Jacquelynn Hatch, D.O.  *See* ECF No. 9-5, PageID.3585, 3631-3633, 3647.  Reliance reviewed those opinions but determined that McEachin was physically capable of sedentary work in April 2021, based on opinions by reviewing physicians Howard Grattan, M.D., and Jon Glass, M.D.  ECF No. 9, PageID.556-563.

Dr. Grattan's opinion summarized McEachin's medical history, citing MRIs showing spinal impairments, physical examinations showing limited range of motion, and treating providers' opinions that McEachin could not return to work.  ECF No. 9-3, PageID.2552-2558.  While Dr. Grattan acknowledged that McEachin's ongoing pain and functional restrictions were unlikely to improve, he found that she could perform full time

7

sedentary work.  *Id.* at PageID.2558-2559; ECF No. 9, PageID.558-559.  In making this finding, Dr. Grattan detailed McEachin's functional limitations, including that she could handle up to ten pounds occasionally and five pounds frequently; that she could sit for one hour continually and up to six hours a workday; that she could walk or stand for ten minutes continually and up to two hours a workday, but could exert a negligible amount of weight when walking with an assistive device; that she could occasionally bend, kneel, and climb stairs, but never repetitively twist, squat, crouch, climb ladders or poles, crawl, or balance.  ECF No. 9-3, PageID.2559.

In an addendum opinion considering new evidence, Dr. Grattan recognized that McEachin needed a third surgery for the incomplete cervical fusion but stated that this did not alter his conclusion about her ability to work.  ECF No. 9-4, PageID.2619-2620.  He reasoned that McEachin did not need emergent surgery and that "functioning at a sedentary level would not increase the risk of further injury."  *Id.* at PageID.2620.  Thus, McEachin could work within the functional limitations until her surgery and the recovery period.  *Id.*

Dr. Glass, a neurologist, also reviewed McEachin's medical file.  ECF No. 9, PageID.561.  He discussed Dr. Kutcher's August 2021 examination notes and acknowledged that McEachin was scheduled for surgery for the

incomplete cervical fusion.  ECF No. 9-5, PageID.3609.  Dr. Glass found that McEachin's radicular lumbar pain and cervical pain were neurologically impairing and that improvement was unlikely since there would be residual pain even after another surgery.  *Id.* at PageID.3609-3610.  He also stated that the cervical spine pain restricted movement and caused balance and gait impairments, while the lumbar spine pain impaired "any form of activity requiring use of the lumbar spine, including walking, bending, lifting, and any activity requiring balancing."  *Id.* at PageID.3610 (cleaned up).  But Dr. Glass concluded that McEachin could work full-time with functional restrictions consistent with sedentary work.  *Id.*; ECF No. 9, PageID.562.

Drs. Grattan and Glass thoroughly described McEachin's medical history and noted medical findings favorable to McEachin.  McEachin's argument that they ignored her treating physicians' opinions lacks merit.  *See* ECF No. 10, PageID.3678.  Dr. Grattan could not discuss those opinions because his July 2021 addendum opinion predated Dr. Bono's, Dr. Kutcher's, and Dr. Hatch's August 2021 opinions.  Yet he noted treating physicians' views that McEachin could not work and addressed McEachin's need for another surgery, finding that she was not disabled.  ECF No. 9-4, PageID.2558, 2620.  Dr. Glass considered Dr. Bono's and Dr. Hatch's opinions and Dr. Kutcher's office notes coinciding with his opinion.  *See*

ECF No. 9-5, PageID.3602, 3608-3609.  He also addressed McEachin's need for surgery but found that it did not preclude work at the sedentary level.  *Id.* at PageID.3609-3610.  And Reliance considered the treating physicians' opinions in its termination notice but deferred to Drs. Grattan and Glass.  ECF No. 9, PageID.561-562.

Nor did Drs. Grattan or Glass reach incredible conclusions inconsistent with the objective evidence.  Reliance highlights medical records showing that these assessments are consistent with the administrative record, as McEachin's condition improved.  In July 2020, McEachin reported to Dr. Hatch that she felt "so much better" after her January 2020 spinal surgery and that she had gone tubing with four friends.  ECF No. 9-2, PageID.2074-2075.  While McEachin was "not 100%," she could walk without a limp, and Dr. Hatch noted no muscular tenderness in the neck, no edema in her legs, no motor weakness or sensory deficits, and normal reflexes.  *Id.* at PageID.2075-2079.

In October 2020, McEachin saw Dr. Bono and reported right-sided back, buttock, and leg pain.  ECF No. 9-3, PageID.2311.  Dr. Bono observed no new motor deficits in McEachin's arms and legs and referred her to pain specialist John Traylor, M.D., for a selective nerve block.  *Id.* at PageID.2310-2313.  While Dr. Bono stated that McEachin could be a

candidate for more surgery, that would only be the case if she failed conservative treatment.  *Id.*  McEachin saw Dr. Traylor in November 2020 and reported intermittent neck and back pain that she rated 5/10.  *Id.* at PageID.2300.  On examination, Dr. Traylor noted diminished range of motion in McEachin's right hip and lumbar spine and that she walked with a right-sided limp.  *Id.* at PageID.2302.  Dr. Traylor planned to perform an epidural steroid injection.  *Id.* at PageID.2303.

McEachin attended 19 physical therapy sessions in February and March 2021.  ECF No. 9, PageID.185; ECF No. 9-3, PageID.2284.  During those sessions, McEachin increased her strength and endurance and made functional improvements such as climbing stairs, sitting, and looking over her shoulder.  *Id.*  She also reported decreased pain; her lumbar pain decreased from 3-5/10 to 1-3/10, and her thoracic pain decreased from 5-8/10 to 2-4/10.  *Id.*

McEachin's migraines also improved over time.  In July 2019, McEachin told Dr. Kutcher that Botox injections improved the severity but not the frequency of her headaches and that she was "sleeping well at night and wakes up refreshed in the morning" from taking Nortriptyline.  ECF No. 9-2, PageID.1697.  In February 2021, McEachin again reported significant improvement in her migraines from Botox and oral

11

medications—she was down to ten headaches per month that were less severe.  ECF No. 9-3, PageID.2378.  In her headache logs for June and July 2021, McEachin rated her headache intensity at 5-8/10 but reported moderate to complete relief with medication.  ECF No. 9-5, PageID.3592-3594.  And in June 2021, McEachin told Kori Rothman, M.D., that she had only two migraines in the last month.  *Id.* at PageID.3586.  McEachin reported increased migraines to Dr. Kutcher in August 2021, but the frequency was not documented, and she admitted that taking Imitrex aborted her headaches.  ECF No. 9-4, PageID.2752.

Drs. Grattan and Glass reach different conclusions than the treating physicians about McEachin's ability to work, but the treating physicians' opinions that she is disabled lacked detail about her functional limitations and the objective evidence supporting her alleged disabling limitations. *See Crider*, 458 F. Supp. 2d at 506 (noting that a treating physician's conclusory statement that a claimant is disabled is unpersuasive); *Bragg v. ABN AMRO N. Am., Inc.*, 579 F. Supp. 2d 875, 899 (E.D. Mich. 2008) (same).

Dr. Bono found that McEachin was totally disabled because she needed an assistive device to walk and had trouble with prolonged sitting, lifting more than ten pounds, and standing and walking long distances.

ECF No. 9-5, PageID.3632-3633.  But Dr. Grattan accommodated those limitations in his opinion.  *See* ECF No. 9-3, PageID.2559.  And Dr. Bono provided no explanation for his belief that McEachin would need to lie down periodically.  *See* ECF No. 9-5, PageID.3632.  While Dr. Bono's opinion that McEachin needed surgery was objectively supported by a CT scan, Dr. Grattan addressed the need for surgery and found that McEachin could still perform sedentary work.  *See id.* at PageID.3632-3633; ECF No. 9-3, PageID.2495.

Dr. Kutcher's opinion is also conclusory and unsupported by objective findings.  He stated that McEachin's diagnoses of post-concussion syndrome, migraines, cognitive changes, and post-traumatic stress disorder led to "certain" mental limitations like trouble with concentration and memory.  ECF No. 9-5, PageID.3585.  But a mere diagnosis without documentation of a functional impairment is not enough to establish a disability.  *See Kiel v. Life Ins. Co. of N. Am.*, 345 F. App'x 52, 57 (6th Cir. 2009).  And Dr. Kutcher's August 2021 office notes do not show that McEachin's physical impairments caused any mental limitations, as he stated that her concentration and memory were normal.  ECF No. 9-4, PageID.2752-2753.  Nor does McEachin point to such evidence.  Dr. Kutcher also stated that although Botox and Aimovig alleviated the

13

frequency and intensity of McEachin's migraines, she had to lay down several times throughout the day and would miss four workdays per month. ECF No. 9-5, PageID.3585. As discussed above, the objective evidence showed that McEachin's migraines had improved.

Dr. Hatch's opinion was based on her observation that McEachin had not "returned to baseline" since her accidents. ECF No. 9-5, PageID.3647. But whether McEachin fully recovered is not at issue; Reliance need only show that McEachin can perform sedentary work. Dr. Hatch also noted that McEachin needed an assistive device to walk and could not sit or stand for a long time, needed frequent breaks to lay down or move around, and had poor balance. *Id.* Again, those restrictions were addressed in Dr. Grattan's opinion about McEachin's functional restrictions, and there is no objective evidence showing that she needed to lay down during the day.

McEachin also argues that while Reliance reserved the right to conduct a physical examination, it did not do so and instead relied on file reviews. ECF No. 10, PageID.3677. A plan administrator's "failure to conduct a physical examination—especially where the right to do so is specifically reserved in the plan—may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295-96 (6th Cir. 2005). But as

discussed above, McEachin has shown no defects in the thoroughness or accuracy of the benefits determination or the reviewing physicians' opinions; nor has she shown "how a physical examination might have overcome any such shortfall in [Reliance's] decisionmaking process." *See Mellian*, 161 F. Supp. 3d at 565.

Last, McEachin argues that SSA's favorable disability determination supports her claim for LTD benefits.  ECF No. 9, PageID.3680-3682.  The ALJ found that McEachin had a residual functional capacity to perform sedentary work with other postural and non-exertional limitations, which would preclude her from performing her past work at the sedentary level or any other work in the national economy.  ECF No. 9-4, PageID.2655-2659.

Since ERISA plans may vary from SSA's disability criteria, "an ERISA plan administrator is not bound by an SSA disability determination when reviewing a claim for benefits." *Whitaker v. Hartford Life & Accident Ins. Co.*, 404 F.3d 947, 949 (6th Cir. 2005) (cleaned up).  Yet Social Security decisions are "far from meaningless." *Calvert*, 409 F.3d at 294.  If a plan administrator encourages an applicant to apply for Social Security benefits and financially benefits from the applicant's receipt of them, the administrator should explain why it is taking a position different from SSA.

*DeLisle v. Sun Life Assurance Co. of Canada*, 558 F.3d 440, 446 (6th Cir. 2009).  Failure to do so may favor rejecting the administrator's decision.  *Id.*

Reliance addressed the SSA decision in its denial of McEachin's appeal, noting that SSA may not have had Dr. Grattan's or Dr. Glass's opinions or other medical records.  ECF No 9, PageID.563.  The Court finds no error in this reasoning.  The ALJ made her decision in July 2019, almost two years before Reliance terminated McEachin's LTD benefits. *See* ECF No. 9-4, PageID.2659.  Reliance's decision was based on medical evidence that was unavailable to the ALJ, including Dr. Grattan's and Dr. Glass's reviews and the more recent records showing improvement in McEachin's migraines and mobility with physical therapy.  *See Martindale v. Lincoln Nat'l Life Ins. Co.*, No. 10-15173, 2011 WL 3957607, at \*12 (E.D. Mich. Sept. 8, 2011) (citing *Black v. Long Term Disability Ins.*, 582 F.3d 738, 748 (7th Cir. 2009)) (plan administrator properly discounted SSA decision because the ALJ did not review the same administrative record).  McEachin argues that the ALJ also did not consider her January 2020 or October 2021 surgeries or the August 2021 opinions from her treating physicians.  That argument misses the mark.  The ALJ's July 2019 decision was properly discounted because she did not consider *any* of the recent evidence.

16

The Court understands that McEachin has significant physical limitations, but finds on de novo review that the medical evidence about her functional limitations supports a finding that McEachin could perform her regular occupation at the sedentary level in April 2021.

**C.**

McEachin also argues that Reliance misapplied the durational limit on LTD benefits for mental or nervous disorders ("mental exclusion"). ECF No. 10, PageID.3682-3685. That exclusion states that "monthly benefits for total disability caused by or contributed to by mental or nervous disorders will not be payable beyond an aggregate lifetime maximum duration of twenty-four (24) months." ECF No. 9, PageID.46 (cleaned up). Reliance bears the burden of showing that the mental exclusion applies. *Okuno v. Reliance Standard Life Ins. Co.*, 836 F.3d 600, 609 (6th Cir. 2016).

Although Reliance found that McEachin was totally disabled in April 2021 from a psychiatric standpoint, it determined that she was ineligible for continued benefits under the mental exclusion. ECF No. 9, PageID.560, 563. Since McEachin had received LTD benefits for nearly four years, from May 2017 through April 2021, the 24-month maximum duration period had expired. *Id.* To be eligible for ongoing benefits, McEachin had to be totally

disabled from a physical standpoint—which Reliance determined she was not.  *Id.*

McEachin maintains that she received LTD benefits based only on a physical condition, so she has not exhausted the 24-month cap on benefits for a mental condition.  ECF No. 10, PageID.3683-3685.  Citing *Okuna*, McEachin contends that the mental exclusion does not apply if a claimant is disabled because of a physical condition alone.  *Id.*  This argument misapplies *Okuna*.  In that case, the plaintiff challenged Reliance's determination that the mental exclusion capped LTD benefits at 12 months because she was disabled from both physical and mental impairments.  836 F.3d at 605, 609.  The Sixth Circuit held that the exclusion applies "'only when the claimant's physical disability was insufficient to render him totally disabled.'"  *Id.* at 607 (quoting *George v. Reliance Standard Life Ins. Co.*, 776 F.3d 349, 355-56 (5th Cir. 2015)).  Thus, "an application is not appropriately denied on the basis that a mental or nervous disorder 'contributes to' a disabling condition; rather, the effect of an applicant's physical ailments must be considered separately to satisfy the requirement that review be reasoned and deliberate."  *Id.* at 609; *see also Michaels v. The Equitable Life. Assurance Soc'y of U.S. Emps., Managers & Agents Long-Term Disability Plan*, 305 F. App'x 896, 907-08 (3d Cir. 2009) (mental

conditions arising from a physical condition would not preclude the insured from receiving continued LTD benefits beyond 24 months if the physical condition independently rendered him disabled).

Thus, *Okuna* does not help McEachin. It holds only that the mental exclusion does not cap benefits at the durational limit if the claimant is independently disabled based on a physical condition. When a plaintiff has exhausted the durational limit, "the Court's task at this stage is to determine whether Plaintiff remains totally disabled based on her physical limitations regardless of her mental condition." *Matteo v. Reliance Standard Life Ins. Co.*, No. 18-11450, 2022 WL 819600, at \*7 (D.N.J. Mar. 17, 2022) (quoting *Watson v. Reliance Standard Life Ins. Co.*, No. 14 C 4990, 2017 WL 5418768, at \*9 (N.D. Ill. Nov. 14, 2017) (cleaned up); *Maurer v. Reliance Standard Life Ins. Co.*, No. C 08-04109, 2011 WL 1225702, at \*7-8 (N.D. Cal. Mar. 31, 2011), *aff'd*, 500 F. App'x 626 (9th Cir. 2012). As discussed above, McEachin has not shown that she was physically disabled in April 2021.

## IV. Conclusion

Thus, the Court **RECOMMENDS** that McEachin's motion for judgment be **DENIED** (ECF No. 10), that Reliance's motion be **GRANTED**

(ECF No. 11), and that the decision of the plan administrator be

**AFFIRMED**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: January 27, 2023

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation,

any party may serve and file specific written objections to this Court's

findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72(b)(2). If a party fails to timely file specific objections, any further appeal

is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And

only the specific objections to this report and recommendation are

preserved for appeal; all other objections are waived. *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this report and

recommendation to which it pertains. Within 14 days after service of

objections, **any non-objecting party must file a response** to the

objections, specifically addressing each issue raised in the objections in the

20

same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections lack merit, it may rule without awaiting the response.


## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 27, 2023.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
